COMMONWEALTH vs. NORMAN BARNES.
TRUSTEES OF BOSTON UNIVERSITY vs. COMMONWEALTH.
CHARLES DIORIO vs. FIRST JUSTICE OF THE QUINCY DIVISION
OF THE DISTRICT COURT DEPARTMENT.

Suffolk. November 8, 2011. - March 14, 2012.

Present: IRELAND, C.J., SPINA, BOTSFORD, GANTS, & DUFFLY, JJ.

*Constitutional Law,* Access to court proceedings, Freedom of speech and press. *Practice, Criminal,* Cameras in courtroom. *Internet.*

Discussion of the constitutional doctrine of prior restraint on freedom of speech and the press, and its application to court orders restricting the dissemination (as part of a pilot project) of video and audio recordings of certain proceedings taking place in the District Court that are "streamed" over the Internet and later archived on the Internet. [650-654]

A District Court judge erred in ordering the redaction of the name of an alleged victim of sexual assault, a minor, from an audio and video recording of a criminal dangerousness hearing that was "streamed" over the Internet, and in ordering a temporary stay of public access to an archive of the recording, where, given that the judge had permitted the recording of the hearing and had permitted the recording to continue after defense counsel had stated the minor's name, the Commonwealth failed to meet its burden to provide evidence that would enable the judge to verify that psychological or physical harm to the minor could result from broad publicity about her connection to the charges at issue, or about her psychological state, her particular interests, or the extent to which her family had sought privacy; where the Commonwealth failed to show that forbidding the "posting" of the archived recording on the Internet was the least restrictive reasonable alternative available; and where the order of redaction lacked detailed findings of fact necessary to demonstrate that no reasonable, less restrictive alternative to the order would protect the minor's privacy interests. [654-657]

A District Court judge did not abuse his discretion in permitting an audio and video recording, which was "streamed" over the Internet and later archived on the Internet, of the criminal defendant's arraignment and of a hearing on a motion to suspend the broadcast, where the recording of the arraignment (including images of the defendant shackled in the prisoner's box) created no substantial likelihood of harm to the defendant's right to a fair trial in unrelated proceedings in another county, given that many alternatives to protect that right existed, including jury voir dire and cross-examination; and where the recording of the hearing did not pose a substantial likelihood of harm to the defendant's right to counsel, in that the microphones used for the recording were the same ones used to create the official court recording. [657-660]

This court referred to its judiciary-media committee the task of preparing, for this court's approval, guidelines to govern the operation of a pilot program making video and audio recordings of certain proceedings taking place in the District Court that are "streamed" over the Internet and later archived on the Internet. [661-662]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on June 23, June 24, and August 3, 2011, respectively.

The cases were reported by *Botsford*, J.

*Varsha Kukafka*, Assistant District Attorney, for the Commonwealth.

*John Fennel*, Committee for Public Counsel Services, for Charles Diorio.

*Lawrence S. Elswit (Christopher T. Bavitz* with him) for Trustees of Boston University.

BOTSFORD, J. On May 2, 2011, as part of a pilot project it has named "OpenCourt," WBUR-FM, a National Public Radio station in Boston, began to broadcast live by "streaming" over the Internet video and audio recordings of certain proceedings taking place in the Quincy Division of the District Court Department (Quincy District Court). We consider here three petitions for relief under G. L. c. 211, § 3, that relate to the OpenCourt project and were reported to this court by a single justice. Each petition challenges one or more orders of a judge in the Quincy District Court concerning the broadcasts and online posting of particular proceedings in two different criminal cases. In the first case, the Commonwealth appealed from the judge's order permitting OpenCourt to "post" to its public, online archives an audio and video recording of a criminal dangerousness hearing conducted pursuant to G. L. c. 276, § 58A.[1] The Commonwealth argues that the judge abused his discretion and failed to protect the alleged minor victim's privacy. OpenCourt has brought a separate petition for relief in the Barnes case, challenging the judge's orders that required OpenCourt to redact the alleged victim's name from the recording and to stay temporarily public

---

[1]Norman Barnes is alleged to have kidnapped a fifteen year old girl and enticed her into prostitution, in violation of G. L. c. 265, §§ 26 and 26C (*b*), respectively.

access to the online archive. As explained *infra*, OpenCourt has an internal policy prohibiting publication of the names of minor victims of sexual assault and does not wish to publish the name, but objects to the court order; OpenCourt's argument is that any restriction on its right to publish the recordings constitutes a prior restraint that violates the First Amendment to the United States Constitution.

Charles Diorio brought the third petition for relief. He appeals from orders permitting the broadcasting and public online archiving of both his July 5, 2011, arraignment in the Quincy District Court, and a motion hearing held on July 25. Diorio contends that the judge abused his discretion and prejudiced Diorio's constitutional right to a fair trial by allowing the hearings to be broadcast and by not requiring the recordings to be removed from OpenCourt's online archives.

We conclude that any order restricting OpenCourt's ability to publish — by "streaming live" over the Internet, publicly archiving on the Web site or otherwise — existing audio and video recordings of court room proceedings represents a form of prior restraint on the freedoms of the press and speech protected by the First Amendment and art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution. Such an order may be upheld only if it is the least restrictive, reasonable measure necessary to protect a compelling governmental interest.

In the Barnes case, we vacate the order of the District Court judge requiring the redaction of the name of the minor alleged victim.[2] We expect and anticipate that OpenCourt will continue to adhere to its policy of not publishing the name of the minor, but we agree that on the record of this case, the judge's order was unconstitutional because the Commonwealth did not provide an adequate demonstration that this particular minor's privacy or psychological well-being would be harmed by publication of her name, or that a prior restraint was the least restrictive reasonable method to protect those interests. In the Diorio case, we

---

[2]The separate order of the District Court judge temporarily staying the archiving of the recording, challenged by OpenCourt, has expired, and we do not address it. The order of the single justice staying public access to OpenCourt's video and audio archives is to be vacated.

conclude that Diorio has not met the heavy burden of justifying an order of prior restraint with respect to the specific proceedings at issue in his petition for relief. Finally, we exercise our discretion pursuant to G. L. c. 211, § 3, to request that the Supreme Judicial Court's judiciary-media committee submit for this court's approval a set of guidelines for the operation of the OpenCourt pilot project.

1. *Background.* Rule 1:19 of the Rules of the Supreme Judicial Court, as amended, 430 Mass. 1329 (2000) (rule 1:19), has governed the use of cameras and other electronic recording devices in the court rooms of the Commonwealth.[3] Pursuant to the rule, "[a] judge shall permit broadcasting, televising, electronic recording, or taking photographs of proceedings open to the public in the courtroom by the news media for news gathering purposes and dissemination of information to the public," subject to certain limitations. For example, a judge "may limit or temporarily suspend" media coverage "if it appears that such coverage will create a substantial likelihood of harm to any person or other serious harmful consequence," rule 1:19 (a)[4]; a judge also "should not permit broadcasting, televising, electronic recording, or taking photographs" of hearings on motions to suppress or dismiss, probable cause hearings, or voir dire hearings, rule 1:19 (b)[5]; and a judge should not make "exclusive arrangement[s]" for news media coverage. Rule 1:19 (g).[6]

OpenCourt, which was created in 2010, operates pursuant to a grant awarded by the Knight Foundation. It is intended to promote greater public access to courts through the use of digital technology. The project broadcasts or "streams live" over the

---

[3]Rule 1:19 of the Rules of the Supreme Judicial Court, as amended, 430 Mass. 1329 (2000) (rule 1:19), recently was amended and retitled "Electronic Access to the Courts." See S.J.C. Rule 1:19, as appearing in *post* 1301 (2012), effective July 1, 2012 (revised rule 1:19). Because these cases arose under rule 1:19 as amended in 2000, references to rule 1:19 in this opinion will be to that version of the rule. References to the analogous provisions of revised rule 1:19 will appear in footnotes, and we will discuss provisions that have been added or changed in revised rule 1:19 where to do so will illuminate the issues.

[4]See revised rule 1:19 (2) (a).

[5]Revised rule 1:19 (2) (b) prohibits recording of voir dire hearings but not recording of motions to suppress or dismiss and probable cause hearings.

[6]See revised rule 1:19 (2) (f).

Internet on a daily basis audio and video recordings of the proceedings taking place in the first session of the Quincy District Court. OpenCourt also posts the daily broadcasts to public archives on its Web site. The Supreme Judicial Court's media-judiciary committee approved the OpenCourt project, but OpenCourt currently does not operate under any formal judicial rules or guidelines other than rule 1:19. OpenCourt began streaming live broadcasts on May 2, 2011, and opened its online archives to public access six weeks later on June 16.

Each day, in order to record the proceedings, OpenCourt sets up a digital camera in the witness box of the first session.[7] Much of the business of the first session focuses on the beginning stages of criminal cases, including arraignments, but the session also entertains other types of proceedings, such as probation surrender hearings, hearings on protective substance abuse commitments and protective orders under G. L. c. 209A, summary process cases, and debt collection cases.

While the OpenCourt project is recording a court session, an OpenCourt producer sits at a desk in the court room's witness box, to the right of the camera. No other members of the media or the public sit in the witness box. Currently, the OpenCourt producer is responsible for turning off the audio and video "feeds" for the broadcast when the judge directs that a particular matter should not be recorded. OpenCourt's goal is to enable the judge presiding over each session to turn on or off the audio and video feeds by pressing a button on a computer installed on the bench.

OpenCourt uses the court room's existing microphones to obtain the audio feed for its live streaming. WBUR-FM paid for the cost of installing and connecting an additional audio cable to the court room's recording "mixer" so that OpenCourt could receive the audio feed from those microphones. Every sound that is broadcast through OpenCourt's audio feed is also a part of the official court record, as both systems use the same audio feed. Prior to the launch of the OpenCourt live stream in May, 2011, OpenCourt held training sessions for court employees, defense attorneys, and prosecutors to demonstrate the sensitivity

---

[7]WBUR-FM purchased the video camera with its own funds.

of the microphones. The project also posted signs near the microphones to alert attorneys and parties that their words could be picked up by the microphones. After OpenCourt began broadcasting, its producers noticed that some confidential conversations between defense attorneys and their clients had been recorded inadvertently. In response, OpenCourt employees contacted several defense attorneys to warn them not to speak too near the microphones.

In accordance with the limitations set out in rule 1:19 and after consultation with its advisory board[8] and others, Open-Court adopted voluntary guidelines for when the project will go "offline." Under these guidelines, OpenCourt does not broadcast or record hearings on motions to suppress or dismiss, bench conferences, or probable cause or voir dire hearings.[9] At the present time, the project also does not broadcast or record hearings of applications for protective orders under G. L. c. 209A unless they are connected with a criminal matter involving allegations of domestic violence, but OpenCourt will reconsider this policy in the future. All other situations "will be decided on a case-by-case basis by the presiding judge." OpenCourt also has a policy against broadcasting the identity of victims of sexual assault, minor victims of crimes, informants, or undercover law enforcement personnel.

After a proceeding or hearing in the first session is "live streamed," OpenCourt delays for two business days before posting the archived recording to its Web site. The delay allows OpenCourt time to redact any portion of the recording that it deems inappropriate, such as "the 'blurting' of a minor victim's name."[10] Recordings are posted to the online archives in their entirety unless OpenCourt makes its own redactions or chooses

[8]Members of the advisory board include judges, law professors, an assistant district attorney, the chief of victim witness services in the Attorney General's office, and the president of the Massachusetts Bar Association.

[9]As previously mentioned (see note 5, *supra*), the revised version of rule 1:19 does not bar the recording of motions to suppress, motions to dismiss, or probable cause hearings.

[10]OpenCourt uses the term "blurt" to refer to a statement made by an attorney, witness, or other participant at a hearing that reveals the name of someone whom the participant had been instructed not to identify, or some other statement containing information that is required by law to be kept confidential, such as the name of a rape victim. See G. L. c. 265, § 24C.

to grant a request for redaction.[11] Any interested party or parties, including attorneys, defendants, victim advocates, or affected individuals, may request redaction before or after the archive has been made public. In order to gain access to the online archives, users must register on the OpenCourt Web site and accept the terms of use. There is no charge for registration.

2. *Discussion.* Central to the resolution of these cases are the freedoms of speech and press guaranteed by the First Amendment and the cognate provisions of art. 16. This court has long recognized:

> "It is desirable that [judicial proceedings] should take place under the public eye . . . because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."

*Republican Co.* v. *Appeals Court,* 442 Mass. 218, 222 (2004), quoting *Cowley* v. *Pulsifer,* 137 Mass. 392, 394 (1884) (Holmes, J.), and citing *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 508-509 (1984) ("openness enhances appearance of fairness essential to public confidence in criminal justice system"). See *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 604-605 (1982) (one purpose of First Amendment right of press access to criminal trials is to ensure effective participation of citizens in self-government and informed discussion of governmental affairs).

The First Amendment entitles the press and public to be present at criminal trials and preliminary hearings, in most circumstances, and to report their observations of what occurred in the court room. See *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 13 (1986) (preliminary hearings); *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 580 (1980) (trials). Court rooms may be closed only when the closure is necessary to serve "a compelling governmental interest" and "narrowly

---

[11]Under OpenCourt's guidelines, if OpenCourt disagrees with the request, the person seeking redaction has the option to request mediation. If mediation is requested, OpenCourt will delay release of the archived recording until the mediation is completed.

tailored" to meet that need. *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. at 606-607. Whether an asserted governmental interest is sufficiently compelling to merit closure must be determined on a case-by-case basis and supported by factual findings. *Id.* at 607-608. When a court room is open and the court proceeding public, a court's authority to prohibit or restrain reports by members of the public or press about what has occurred in the proceeding is extremely limited, as we discuss more fully *infra.*

Although the public has the right to be physically present in a court room, there is no constitutional right to bring cameras into or to make audio or video recordings of court room proceedings. *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 610 (1978). However, if a court chooses in its discretion to allow recording, the person or entity making it has the same First Amendment freedom to disseminate the information it records as any other member of the print media or public, and the court is limited by the prior restraint doctrine in its ability to restrain the publication of the recording.

We first consider whether the constitutional doctrine of prior restraint applies to court orders restricting the dissemination of OpenCourt's recordings. Because we conclude that it does, we then address whether a prior restraint can be constitutionally justified in either the Barnes or Diorio case.

a. *Prior restraint doctrine.* "The term 'prior restraint' is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.' " *Alexander* v. *United States*, 509 U.S. 544, 550 (1993), quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, at 4-14 (1984). "Temporary restraining orders and permanent injunctions — i.e., court orders that actually forbid speech activities — are classic examples of prior restraints." *Alexander* v. *United States, supra.*

From the beginning, the liberty of the press guaranteed by the First Amendment and art. 16 was understood as primarily a guarantee of freedom from prior restraints, such as the licensing system employed by the British government in the Sixteenth and Seventeenth Centuries to prevent the publication of material it deemed unsuitable. See A. Lewis, Freedom for the Thought

That We Hate: A Biography of the First Amendment 1-3, 6
(2007). Reflecting this history, the Supreme Court has been
clear that prior restraints "require an unusually heavy justifica-
tion under the First Amendment." *New York Times Co.* v. *United
States*, 403 U.S. 713, 733 (1971) (White, J., concurring). Put
another way, there is a "heavy presumption" against the con-
stitutionality of prior restraints. *Nebraska Press Ass'n* v. *Stuart*,
427 U.S. 539, 558 (1976), quoting *Organization for a Better
Austin* v. *Keefe*, 402 U.S. 415, 419 (1971). A prior restraint can-
not be upheld unless "justified by a compelling State interest to
protect against a serious and identified threat of harm." *George
W. Prescott Publ. Co.* v. *Stoughton Div. of the Dist. Court Dep't
of the Trial Court*, 428 Mass. 309, 311 (1998) (*Prescott*). "[A]ny
order seeking to enjoin speech must be based on detailed find-
ings of fact that (a) identify a compelling interest that the restraint
will serve and (b) demonstrate that no reasonable, less restric-
tive alternative to the order is available." *Id.*, quoting *Care &
Protection of Edith*, 421 Mass. 703, 705 (1996). Furthermore,
"[t]here is a particularly high burden of justification where,
having opened the proceedings and the court records . . . to the
public, the judge [seeks] to restrict the press from reporting
fully on the cases." *Prescott, supra.*[12]

The Commonwealth argues that we need not apply prior
restraint analysis to the OpenCourt project because OpenCourt
was only able to make the challenged recordings of court proceed-
ings through the permission and cooperation of the Quincy
District Court.[13] Because there is no constitutional right to re-
cord or broadcast court room proceedings, the Commonwealth

_____

[12]The passages from *George W. Prescott Publ. Co.* v. *Stoughton Div. of the
Dist. Court Dep't of the Trial Court*, 428 Mass. 309, 311 (1998), quoted in the
text are based on this court's analysis of art. 16 of the Massachusetts Declara-
tion of Rights, as amended by art. 77 of the Amendments to the Massachusetts
Constitution, but the constitutional principles embodied in art. 16 are not
"significantly different" from the principles underlying the First Amendment
to the United States Constitution. *Care & Protection of Edith*, 421 Mass. 703,
705 (1996), citing *Krebiozen Research Found.* v. *Beacon Press, Inc.*, 334
Mass. 86, 96-97, cert. denied, 352 U.S. 848 (1956).

[13]In support of its point, the Commonwealth points to the fact that the
Quincy District Court allowed OpenCourt to install and connect another audio
cable to the court's recording mixer in order to provide the audio feed for the
broadcasts and to use court room space in the witness box for OpenCourt's
camera and producers.

contends that the court retains the ultimate power and authority to direct how OpenCourt may broadcast, archive, or otherwise disseminate the audio and video recordings it creates; in any event, according to the Commonwealth, the judge has violated rule 1:19 because the Quincy District Court has made an exclusive media coverage arrangement with OpenCourt. See rule 1:19 (g).[14] Diorio advances a separate but related claim, namely, that the court has provided such significant encouragement and support for OpenCourt that all its recordings must be deemed court documents — with the consequence that, like any other court filing, they are subject to redaction or impoundment for good cause without implicating First Amendment concerns.

The Quincy District Court's cooperation with OpenCourt is not extensive enough to permit us to draw the conclusions urged by the Commonwealth and Diorio. OpenCourt is a project of WBUR-FM, a private entity. OpenCourt and WBUR-FM employ their own production staff and OpenCourt retains the recordings it makes on its own Web site, rather than a court Web site. WBUR-FM paid for the camera and audio cable OpenCourt needed to secure its video and audio feeds; the Quincy District Court did not. Although the Commonwealth and Diorio both allege that OpenCourt enjoys exclusive access to court proceedings, OpenCourt only records hearings that are open to the public and other media organizations. To the extent that Open-Court is operating in a manner different from any other media organization, OpenCourt states that it is the only news medium that has requested permission to broadcast live by streaming video recording. Moreover, OpenCourt's unique methods derive from its status as a pilot project rather than from an exclusive arrangement with the court. We understand that OpenCourt's recording of court room proceedings on a daily basis permits a new and different application of our rule and policy generally authorizing cameras in and electronic access to Massachusetts court rooms. See rule 1:19.[15] It is for this reason, and because OpenCourt is a pilot project, that we believe it appropriate to develop guidelines to govern OpenCourt's operations, as we discuss *infra*.

[14]See also revised rule 1:19 (2) (f).
[15]See also revised rule 1:19.

The limitations on recording that are set out in rule 1:19, and particularly rule 1:19 (a),[16] which authorizes judges temporarily to suspend electronic recording of a proceeding if there is "a substantial likelihood of harm to any person," are important for judges to consider when deciding whether to authorize audio and video recording of proceedings. Once a proceeding is recorded, the ability of the judge or an appellate court to control what media organizations do with the recording is highly constrained. Thus, even if an appellate court should conclude that there was an abuse of discretion in permitting the proceeding to be recorded, there can be no restraint on publication of the recording unless the court also determines that such a restraint is necessary to protect a compelling governmental interest and is the least restrictive reasonable method to do so. See *Prescott*, 428 Mass. at 311.

We turn to whether the Commonwealth and Diorio have met their burden of demonstrating that such findings can be made in the two cases at issue.

(i) *Application to Barnes.* Norman Barnes is alleged to have kidnapped a fifteen year old girl (minor) and enticed her into prostitution. See note 1, *supra*. The dangerousness hearing at issue in the case was held on May 27, 2011.[17] During the hearing, two State troopers testified concerning their interactions and conversations with the minor and with her aunt and uncle. Despite the judge's instruction at the beginning of the hearing that the minor's name was not to be revealed, defense counsel accidentally stated the minor's name three times: her full name once, her first name once, and her surname once. In addition, the name of the street where the minor encountered the defendant and the name of her high school were disclosed. Her aunt's and uncle's full names were repeated several times.

The Commonwealth moved to turn off OpenCourt's camera

---

[16]See revised rule 1:19 (2) (a).

[17]Pursuant to G. L. c. 276, § 58A, a dangerousness hearing may be held to determine whether the release on personal recognizance of a defendant accused of a felony would pose a danger to "any other person or the community," or would not reasonably assure the appearance of the defendant. If so, the judge may order the defendant held without bail or impose other conditions on release. See *id.* See also *Commonwealth* v. *Arrington*, 455 Mass. 437, 439 n.2 (2009).

before the hearing began; the judge denied the motion.[18,19] After the minor's name was blurted during the hearing, however, the judge allowed the Commonwealth's motion to stay public access to OpenCourt's archived recording because of the disclosure of the name. On June 16, 2011, the judge reversed his previous allowance of the Commonwealth's motion but ordered Open-Court to redact the minor's name from the recording. On June 20, the judge granted an emergency stay of his order allowing public access to the archived recording, pending the Commonwealth's emergency petition to a single justice of this court under G. L. c. 211, § 3.

The Commonwealth challenges, as an abuse of discretion, the judge's decision permitting OpenCourt to post the recording on its Web site. The Commonwealth's argument is that the posting and subsequent archiving violated the minor's right to privacy and jeopardized her safety,[20] and that protecting the privacy of minor sexual assault victims is a compelling State interest that justifies a judicial order forbidding posting the recording on OpenCourt's Web site.

The judge's decisions to permit the recording of a G. L. c. 276, § 58A, dangerousness hearing involving a fifteen year old alleged victim of sexual assault, and to permit recording to continue after defense counsel had stated the minor's name, were probably unwise. Given the nature of the crimes charged in the Barnes case of kidnapping and enticing a child under sixteen years, and the recognized sensitivities of adolescents to invasions of privacy, cf. *Safford United Sch. Dist. No. 1* v. *Redding*, 129 S. Ct. 2633, 2641 (2009) (discussing "adolescent vulnerability" in relation to invasion of privacy during school strip search), there was at least a reasonable likelihood that the recording and public archiving

---

[18] The Commonwealth does not appeal from the judge's denial.

[19] Revised rule 1:19 (2) (c) prohibits photographing minors and sexual assault victims absent the judge's consent. However, this revision would not have affected the Barnes case because the minor did not testify at the dangerousness hearing.

[20] The Commonwealth also asserts that the judge's ruling violates rule 1:19 (g) (prohibiting "exclusive arrangement[s]" for news media coverage). However, there is no evidence in the record that other media organizations have been excluded from the court room or denied permission to record court room proceedings.

of the dangerousness proceedings would cause emotional distress and related harm to the minor if she were to be accidentally identified (which, in fact, occurred). See rule 1:19 (a).[21] But regardless of our assessment of the judge's decision, we are bound by the fact that he allowed OpenCourt to make a recording of the dangerousness hearing that is now in OpenCourt's possession. Accordingly, we may only grant the relief the Commonwealth seeks if we conclude that an order forbidding archiving or requiring redaction meets the extremely high bar for constitutional prior restraints.

The United States Supreme Court has held that "safeguarding the physical and psychological well-being of a minor" may be a compelling interest, but a determination of the measures necessary to protect that interest must occur on a case-by-case basis, considering factors such as the "minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. at 607-608. Cf. *Commonwealth* v. *Weston W.*, 455 Mass. 24, 34 (2009), quoting *Blixt* v. *Blixt*, 437 Mass. 649, 656 (2002), cert. denied, 537 U.S. 1189 (2003) (in context of strict scrutiny analysis, government has compelling interest in "protect[ing] children from actual or potential harm"). Although the Commonwealth argued to the judge that psychological or physical harm could result from broad publicity about the charges and the minor's connection to them, it did not provide affidavits or other evidence that would enable the judge to verify these contentions in this specific case, nor did the Commonwealth present evidence relating to this particular minor's psychological state, her particular interests, or the extent to which she or her family has sought privacy.

Furthermore, the Commonwealth has failed to show that forbidding OpenCourt to post the archived recording on its Web site is the least restrictive reasonable alternative available. See *Prescott*, 428 Mass. at 311. See also *Carroll* v. *President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968) ("An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective per-

---

[21]See also revised rule 1:19 (2) (a).

mitted by constitutional mandate and the essential needs of the public order").[22]

We also conclude, as OpenCourt urges, that the judge's June 16 order requiring the redaction of the minor's name from the recording of the hearing is an unconstitutional prior restraint, because it lacks "detailed findings of fact" that are necessary to "demonstrate that no reasonable, less restrictive alternative to the order" would protect the minor's privacy interests. See *Prescott*, 428 Mass. at 311. The judge stated: "The court believes that redacting the minor's name from the video and audio archives balances the public interest with the victim's right to protect her privacy and is less restrictive of First Amendment concerns." As indicated, while the Commonwealth presented its argument that the minor would suffer harm from the disclosure of her name, it did not submit affidavits or other evidence substantiating its claims. Nor did the judge hold a hearing or make any further factual findings as to whether the Commonwealth's assertions were true. Based on this record, we conclude that the order cannot stand.[23],[24]

(ii) *Application to Diorio.* On July 5, 2011, Charles Diorio

[22]The Commonwealth contends that such a prohibition is the least restrictive alternative, because quite apart from the minor's name, there were so many identifying details disclosed during the hearing's course that the minor's identity can be readily determined and consequently her privacy and well-being will be injured by making any portion of the hearing available to the public. We disagree. Much of the identifying information other than the minor's name already has been reported in the print media, including the name of the street where she met the defendant, the names of the motels where she was taken, and the high school she attends. Given the existing and ready availability of this information in the public domain, an order forbidding any posting of these details on the Web site would fail to achieve its intended protective purpose and, therefore, is broader than constitutionally allowed. See *Oklahoma Publ. Co.* v. *District Court*, 430 U.S. 308, 310 (1977) ("the First and Fourteenth Amendments [to the United States Constitution] will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public").

[23]As noted, OpenCourt has agreed voluntarily to redact the minor's name from the archived recording as well as "any information it deems necessary to protect the identity of the minor in this case or in any cases that OpenCourt records."

[24]This conclusion does not mean that a prior restraint may never issue to prevent the publication of information that has been revealed in a court proceeding. The Supreme Court "has frequently denied that First Amendment

was arraigned in the Quincy District Court on charges including armed assault in a dwelling and kidnapping, in violation of G. L. c. 265, §§ 18A and 26, respectively. Prior to the arraignment, Diorio filed a motion to preclude cameras in the court room; he argued this was necessary in order to protect his constitutional right to an impartial jury and a fair trial. Specifically, Diorio claimed that there was an issue of identification in another case pending against him in the Chelsea Division of the District Court Department in Suffolk County, and that his appearance on the OpenCourt broadcast of the arraignment in the Quincy District Court in Norfolk County would create a risk of an improperly suggestive identification in the Suffolk County case.[25] The judge denied this motion and permitted OpenCourt to record and broadcast the proceeding. On July 18, Diorio filed an emergency motion to suspend permanently the posting and archiving of his July 5 arraignment on OpenCourt's Web site. The parties returned to court on July 25 for a pretrial hearing. At that time, Diorio moved to preclude the broadcast and archiving of the pretrial hearing. The judge denied the motion. Diorio's counsel then waived Diorio's appearance in the court room due to concern about the possible Suffolk County case identification issues, and the judge heard argument by counsel on the motion permanently to suspend archiving of the July 5

rights are absolute and has consistently rejected the proposition that a prior restraint can never be employed." *Nebraska Press Ass'n* v. *Stuart*, 427 U.S. 539, 570 (1976), and cases cited. See *Organization for a Better Austin* v. *Keefe*, 402 U.S. 415 (1971); *Near* v. *Minnesota ex rel. Olson*, 283 U.S. 697 (1931). If a judge takes measures to prevent information from being released to the public, but the information is nonetheless inadvertently disclosed (as in this case), the judge must consider whether prohibiting further publication of that information would serve a compelling interest and whether there is any less restrictive reasonable alternative to a prior restraint on publication. If the judge determines that the answers to the questions are, respectively, "yes" and "no," an order of prior restraint, supported by the requisite factual findings, may be constitutionally permissible.

[25]The charges against Diorio in the Chelsea Division of the District Court Department include assault with intent to murder by means of a firearm, G. L. c. 265, § 18 (*b*); aggravated assault and battery, G. L. c. 265, § 13A (*b*); armed carjacking, G. L. c. 265, § 21A; assault by means of a dangerous weapon, G. L. c. 265, § 15B (*b*); and various firearms offenses. According to Diorio's counsel in that case, none of the victims had identified Diorio as their attacker as of July 22, 2011. Diorio makes no claim that the criminal case in Norfolk County involves an identification issue.

arraignment proceeding.[26] In a memorandum of decision issued on July 29, the judge denied Diorio's motion because he determined that there was no substantial likelihood of harm deriving from the archiving. He found that Diorio's claims of harm did not go beyond "speculation or a remote possibility of archival retrieval by interested witnesses in the Suffolk County criminal proceedings." The judge further noted that any bias due to pretrial media exposure could be remedied by juror voir dire and cross-examination of witnesses at the defendant's subsequent trial in Suffolk County.

Diorio argues that the judge abused his discretion by permitting the recording and archiving of the two hearings, and presses his point that the judge's ruling harmed his rights to a fair trial and effective assistance of counsel. If potential witnesses or jurors in the pending Suffolk County case against Diorio were to watch the archived July 5 arraignment, they could see Diorio shackled in the prisoner's dock while the clerk read the charges against him; in Diorio's view, the availability of this image on the Web site creates a substantial likelihood of harm to his fair trial rights because it could prejudice viewers to believe that he had committed the charged Suffolk County crimes. He claims also that permitting OpenCourt to use the court room microphones for its audio feed during the July 5 arraignment violated his right to effective assistance of counsel, because the microphones can pick up court room whispers, preventing him from speaking confidentially with his attorney during the proceeding. Permitting recording prejudiced Diorio's right to assistance of counsel on July 25 as well, he contends, because he was forced to choose between remaining in the lockup during that hearing or attending the hearing and being filmed.

The judge did not abuse his discretion. We agree with the judge that there was no substantial likelihood of harm to Diorio's fair trial right, because the case against Diorio in which identification was at issue took place in another county, and

---

[26]Due to technical difficulties, OpenCourt was unable to archive any proceeding that took place on July 5, including Diorio's arraignment. Accordingly, Diorio's challenge to the order allowing his arraignment to be archived is moot. We reach the issue, however, because it is important and fully briefed by the parties. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

many alternatives to protect the right existed, including juror voir dire and cross-examination during any subsequent trial on those charges. "[P]retrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial." *Nebraska Press Ass'n* v. *Stuart*, 427 U.S. at 565.

Nor did recording the hearing pose a substantial likelihood of harm to Diorio's right to counsel. Because the OpenCourt project uses the same microphones as those used by the court system to make the official court recording, anything a defendant says to his attorney that is picked up by OpenCourt is also captured on the official court recording. The defendants and their counsel must take exactly the same precautions to ensure that their conversations are not recorded as they would if OpenCourt were not present in the court room.[27]

Diorio also contends that this court may order OpenCourt to redact his image from its online archive. Such a prior restraint is justified, he asserts, because redaction is the least restrictive reasonable method to protect his right to a fair trial. Because Diorio did not move in the District Court for redaction of his image,[28] we deem the issue waived.[29] See *Carey* v. *New England Organ Bank*, 446 Mass. 270, 285 (2006).

---

[27]Our rejection of Diorio's arguments challenging the recording and archiving of his arraignment and OpenCourt's use and placement of microphones calls for a similar rejection of his claim that he was denied his right to the assistance of counsel because the judge's ruling forced him to remain in the court's lockup facility rather than attend the July 25, 2011, hearing in the court room. That is, because we have concluded that the broadcast and archiving of public proceedings in Diorio's Norfolk County case did not impermissibly burden his right to a fair trial in his Suffolk County case, the decision of Diorio's counsel to have Diorio remain in the court house lockup facility rather than attend the hearing in the court room — a decision in which Diorio appears to have joined or at least acquiesced — must be viewed as a voluntary, strategic choice, not an impermissibly compelled one.

[28]Diorio's July 5 motion requested only that the court "suspend any authorization allowing video and audio recording in the courtroom during the scheduled hearing." His July 18 motion requested that posting of his July 5 arraignment be "permanently suspend[ed]."

[29]Even if we were to consider the argument, it is unlikely that such an order could be justified. Although a defendant's right to a fair trial is an important State interest, as suggested earlier in the text, less restrictive methods exist to protect this right. We see no reason to believe that publication of the defendant's image in OpenCourt's archive would lead to an unfair trial in the Suffolk

b. *Revision of rule 1:19.* As the foregoing discussion reflects, constitutional prerogatives make crafting an effective remedy for what an appellate court might later conclude was an erroneously granted authorization to record a particular court proceeding both delicate and difficult. Although an appellate court can overturn a judge's decision to deny video and audio recording, the converse is not true. This structural concern is magnified by the nature of the OpenCourt pilot project. In the past, media requests to record court proceedings under rule 1:19 and S.J.C. Rule 3:09, Canon 3 (A) (7), as appearing in 387 Mass. 1218 (1983), generally have been limited to trials and other court proceedings of particular public interest and, of significance, have been made before the scheduled trial or proceeding date. As a result, it has been possible for judges and appellate courts to give careful, case-by-case, and advance consideration to requests or motions to allow or deny recording. See, e.g., *Commonwealth* v. *Perkins*, 450 Mass. 834, 846-848 (2008); *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 845-848 (1988). In contrast, OpenCourt records every proceeding, other than those involving protective orders, that occurs in the first session of the Quincy District Court, unless recording is forbidden by rule 1:19 (b)[30] or by the judge in his or her discretion.

As the Commonwealth points out, when one of our courts establishes or permits a pilot project relating to an area of its work, it is generally the case that a set of guidelines or rules are issued to govern the pilot's operation. In the present case, particularly in light of the fact that the OpenCourt project differs from the traditional media approach to the use of cameras in the court room under rule 1:19, we think it appropriate and in the spirit of that rule for a set of guidelines to be prepared and submitted to this court for review and approval. We therefore refer the task to the Supreme Judicial Court's judiciary-media committee. While the contents of the guidelines are for that committee to develop, issues that might be considered include

County case. In any event, because of the technical problems that made it impossible for OpenCourt to preserve the recording of the July 5 arraignment (see note 26, *supra*), and because Diorio did not appear in court on July 25, there does not appear to be any recording of Diorio's image in OpenCourt's possession.

[30]See revised rule 1:19 (2) (b).

whether there are any additional types of proceedings beyond those currently enumerated in rule 1:19 at which live-streaming and archiving on the Internet should be restricted.[31] It may be helpful also to provide guidance with respect to appropriate procedures to follow in cases where a party or OpenCourt itself indicates an intent to appeal from a judge's decision denying or allowing a motion to prohibit or limit OpenCourt's recording of a particular proceeding.

We will not require OpenCourt to suspend its operations pending the preparation, submission, and approval of these project guidelines. We expect, however, that in the interim, OpenCourt, like all news media organizations, will work with the court system, prosecutors' offices, and the defense bar to safeguard the rights of criminal defendants as well as those of witnesses and alleged victims of crime. "The extraordinary protections afforded by the First Amendment carry with them something in the nature of a fiduciary duty to exercise the protected rights responsibly . . . . It is not asking too much to suggest that those who exercise First Amendment rights in newspapers or broadcasting enterprises direct some effort to protect the rights of an accused to a fair trial by unbiased jurors." *Nebraska Press Ass'n v. Stuart*, 427 U.S. at 560.

3. *Conclusion.* We remand these matters to the single justice to issue an order denying the Commonwealth's petition in S.J.C.

---

[31]For example, in order to protect privacy interests, many jurisdictions prohibit or restrict the recording of proceedings involving minors or sexual assault victims. See, e.g., Administrative Order No. 6(c)(5) of the Supreme Court of Arkansas, Ark. Code Ann., Court Rules at 1100 (LexisNexis 2011); Rule 1001 of the Rules of the Supreme Court of Kansas, Kansas Rules of Court and Procedure at 749 (West 2012); Rule 4.02(c)(vi) of the Minnesota General Rules of Practice for the District Courts, Minnesota Rules of Court at 518 (West 2011); Rule 3(*d*) of the Mississippi Rules for Electronic and Photographic Coverage of Judicial Proceedings, Miss. Code, Court Rules at 1697 (2011); Supreme Court of Missouri, Mo. Court Rules at 727 (West 2011); Guideline 2(c) of the Supreme Court Guidelines for Still and Television Camera and Audio Coverage of Proceedings in the Courts of New Jersey (2003) (promulgated under Canon 3A[9] of N.J. Code of Judicial Conduct).

In addition, because OpenCourt has indicated that the project may be interested in recording protective order hearings under G. L. c. 209A in the future, we suggest that our judiciary-media committee consider whether it is appropriate to permit unrestricted recording, broadcasting, and posting of these hearings.

No. SJ-2011-0261 and Diorio's petition in S.J.C. No. SJ-2011-0340, and granting OpenCourt's petition in S.J.C. No. SJ-2011-0265.

*So ordered.*