NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12748

MASHA M. SHAK  vs.  RONNIE SHAK.


Norfolk.      November 4, 2019. - May 7, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Divorce and Separation, Discontinuance of libel.  Constitutional
     Law, Freedom of speech and press, Divorce.



     Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on February 5, 2018.

     A complaint for contempt, filed on June 8, 2018, was heard
by George F. Phelan, J., and questions of law were reported by
him.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Richard M. Novitch (Gary Owen Todd & Julianna Zane also
present) for the mother.
     Jennifer M. Lamanna for the father.
     Ruth A. Bourquin & Matthew R. Segal, for American Civil
Liberties Union of Massachusetts, amicus curiae, submitted a
brief.


     BUDD, J.  Nondisparagement orders often are issued as a

means to protect minor children during contentious divorce or

child custody proceedings in order to protect the child's best interest. At issue here are orders issued to the parties in this case in an attempt to protect the psychological well-being of the parties' minor child, given the demonstrated breakdown in the relationship between the mother and the father. We conclude that the nondisparagement orders at issue here operate as an impermissible prior restraint on speech.[1]

Background. Ronnie Shak (father) and Masha M. Shak (mother) were married for approximately fifteen months and had one child together. The mother filed for divorce on February 5, 2018, when the child was one year old. The mother then filed an emergency motion to remove the father from the marital home, citing his aggressive physical behavior (including roughly grabbing their child and throwing items at their neighbors), temper, threats, and substance abuse. A Probate and Family Court judge ordered the father to vacate the marital home and issued temporary orders granting the mother sole custody of the child, and a date for a hearing was set. Before the hearing, the mother filed a motion for temporary orders, which included a request that the judge prohibit the father from posting disparaging remarks about her and the ongoing litigation on social media. After a hearing, the judge issued temporary

---

[1] We acknowledge the amicus brief submitted by the American Civil Liberties Union of Massachusetts.

orders that included, in paragraphs six and seven, nondisparagement provisions against both parties (first order):

> "6.  Neither party shall disparage the other -- nor permit any third party to do so -- especially when within hearing range of the child.

> "7.  Neither party shall post any comments, solicitations, references or other information regarding this litigation on social media."

The mother thereafter filed a complaint for civil contempt alleging that the father violated the first order by "publish[ing] numerous [social media] posts and commentary disparaging [her] and detailing the specifics of th[e] litigation on social media."  The mother further alleged that the father had shared these posts with members of her religious community, including her rabbi and assistant rabbi, as well as with her business clients.  In the father's answer, he denied having been timely notified of the judge's first order and raised the judge's lack of authority "to issue [a] prior restraint on speech."

After a hearing, a different judge declined to find contempt on the ground that the first order, as issued, constituted an unlawful prior restraint of speech in violation of the father's Federal and State constitutional rights. However, the judge concluded that orders restraining speech are permissible if narrowly tailored and supported by a compelling State interest.  The judge sought to cure the perceived

deficiencies of the first order by issuing further orders of future disparagement (orders) which stated in relevant part:

"1) Until the parties have no common children under the age of [fourteen] years old, neither party shall post on any social media or other Internet medium any disparagement of the other party when such disparagement consists of comments about the party's morality, parenting of or ability to parent any minor children. Such disparagement specifically includes but is not limited to the following expressions: 'cunt', 'bitch', 'whore', 'motherfucker', and other pejoratives involving any gender. The Court acknowledges the impossibility of listing herein all of the opprobrious vitriol and their permutations within the human lexicon.

"2) While the parties have any children in common between the ages of three and fourteen years old, neither party shall communicate, by verbal speech, written speech, or gestures any disparagement to the other party if said children are within [one hundred] feet of the communicating party or within any other farther distance where the children may be in a position to hear, read or see the disparagement."[2]

The judge stayed those orders and purported to report two questions to the Appeals Court.[3] We allowed the mother's

---

[2] The judge's orders included two additional sections that were neither challenged by the parties nor addressed in the judge's reported questions. We therefore do not express an opinion about them.

[3] The questions reported by the judge are:

(1) "Are 'Non-Disparagement' orders [issued in the context of divorce litigation] an impermissible restraint on constitutionally protected free speech?"

(2) "Are 'Non-Disparagement' orders [issued in the context of divorce litigation] enforceable and not an impermissible restraint on free speech when there is a compelling public interest in protecting the best interests of minor children?"

application for direct appellate review.  Rather than answering the reported questions, we focus strictly on the correctness of the orders issued by the second judge in this case.  See McStowe v. Bornstein, 377 Mass. 804, 805 n.2 (1979) ("Although a judge may report specific questions of law in connection with an interlocutory finding or order, the basic issue to be reported is the correctness of his finding or order.  Reported questions need not be answered in this circumstance except to the extent that it is necessary to do so in resolving the basic issue").  See also Mass R. Dom. Rel. P. 64(a).

Discussion.  The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."  "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  Ashcroft v. American Civ. Liberties Union, 535 U.S. 564, 573 (2002), quoting Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 65 (1983).  Article 16 of the Declaration of Rights, as amended by art. 77 of the Amendments, is at least as protective of the freedom of speech as the First

Amendment.[4]  Care & Protection of Edith, 421 Mass. 703, 705 (1996).

"The term 'prior restraint' is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'"  Alexander v. United States, 509 U.S. 544, 550 (1993), quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, at 4-14 (1984).  Nondisparagement orders are, by definition, a prior restraint on speech.  See Care & Protection of Edith, 421 Mass. at 705 ("An injunction that forbids speech activities is a classic example of a prior restraint").  Because the prior restraint of speech or publication carries with it an "immediate and irreversible sanction" without the benefit of the "protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted," it is the "most serious and the least tolerable infringement on First Amendment rights."  Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976).  See Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 559 (1975) ("a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand").

---

[4] Article 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments, states in pertinent part: "The right of free speech shall not be abridged."

As "one of the most extraordinary remedies known to our jurisprudence," Nebraska Press Ass'n, 427 U.S. at 562, in order for prior restraint to be potentially permissible, the harm from the unrestrained speech must be truly exceptional. See Near v. Minnesota ex rel. Olson, 283 U.S. 697, 716 (1931).[5,6] A prior restraint is permissible only where the harm expected from the unrestrained speech is grave, the likelihood of the harm occurring without the prior restraint in place is all but

---

[5] Leading cases from the Supreme Court that have held prior restraints to be unconstitutional illustrate what constitutes truly exceptional circumstances. See, e.g., New York Times Co. v. United States, 403 U.S. 713, 714, 718 (1971) (Black, J., concurring) (prior restraint against publication of classified information allegedly involving national security concerns unconstitutional); Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 561-562, 569 (1976) (in circumstances, prior restraint against publication of information about defendant's criminal trial unconstitutional despite risk of "adverse impact on the attitudes of those who might be called as jurors"); Kingsley Int'l Pictures Corp. v. Regents of the Univ. of the State of N.Y., 360 U.S. 684, 688 (1959) (prior restraint on display of films promoting "sexual immorality" unconstitutional censorship of ideas).

[6] In Near v. Minnesota ex rel. Olson, 283 U.S. 697, 716 (1931), the Supreme Court established three categories of speech that potentially could justify a prior restraint:  obscene speech, incitements to violence, and publishing national secrets.  With respect to these exceptions, two of the three -- obscenity and incitement to violence -- are no longer considered protected speech under the First Amendment.  See Nebraska Press Ass'n, 427 U.S. at 590, and cases cited (Brennan, J., concurring); Times Film Corp. v. Chicago, 365 U.S. 43, 48 (1961).  Even so, in cases involving obscenity and incitement to violence, "adequate and timely procedures are mandated to protect against any restraint of speech that does come within the ambit of the First Amendment." Nebraska Press Ass'n, supra at 591, and cases cited (Brennan, J., concurring).

certain, and there are no alternative, less restrictive means to mitigate the harm. See Nebraska Press Ass'n, supra.

It is true that "[p]rior restraints are not unconstitutional per se." Southeastern Promotions, Ltd., 420 U.S. at 558, citing Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 n.10 (1963). See Nebraska Press Ass'n, 427 U.S. at 570, and cases cited ("This Court has frequently denied that First Amendment rights are absolute and has consistently rejected the proposition that a prior restraint can never be employed"). However, the Supreme Court has made clear that prior restraints are heavily disfavored. See Near, 283 U.S. at 716 (prior restraint is appropriate "only in exceptional cases"). The Court has stated specifically that "[a]ny system of prior restraint . . . comes . . . bearing a heavy presumption against its constitutional validity" (quotations and citation omitted). Southeastern Promotions, Ltd., supra at 558, and cases cited.

A prior restraint "avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." Southeastern Promotions, Ltd., 420 U.S. at 559, quoting Freedman v. Maryland, 380 U.S. 51, 58 (1965). To determine whether a prior restraint is warranted, the Supreme Court has looked to (a) "the nature and extent" of the speech in question, (b) "whether other measures would be likely to mitigate the effects of unrestrained" speech,

and (c) "how effectively a restraining order would operate to prevent the threatened danger." Nebraska Press Ass'n, 427 U.S. at 562. "[T]he barriers to prior restraint remain high and the presumption against its use continues intact." Id. at 570.

We have acknowledged that prior restraints "require an unusually heavy justification under the First Amendment." Commonwealth v. Barnes, 461 Mass. 644, 652 (2012), quoting New York Times Co. v. United States, 403 U.S. 713, 733 (1971) (White, J., concurring). Given the "serious threat to rights of free speech" presented by prior restraints, we have concluded that such restraints cannot be upheld unless "justified by a compelling State interest to protect against a serious threat of harm." Care & Protection of Edith, 421 Mass. at 705. Additionally, "[a]ny limitation on protected expression must be no greater than is necessary to protect the compelling interest that is asserted as a justification for the restraint."[7] Id.

On the occasions that we have considered claims of prior restraint, we have concluded that the restraint in question was

_____

[7] We note that other State courts also have ruled on prior restraint claims in the context of divorce, child custody, and child welfare cases and, in doing so, have used various language to describe the applicable standard. The common theme is that the bar for a prior restraint is extremely high. See, e.g., In re Marriage of Newell, 192 P.3d 529, 535-537 (Colo. Ct. App. 2008); In re Summerville, 190 Ill. App.3d 1072, 1077-1079 (1989); Johanson v. Eighth Judicial Dist. Court, 124 Nev. 245, 250-253 (2008); Matter of Adams v. Tersillo, 245 A.D.2d 446, 447 (N.Y. 1997); Grigsby v. Coker, 904 S.W.2d 619, 621 (Tex. 1995).

impermissible.  See, e.g., Barnes, 461 Mass. at 656-657 (prior restraint on Internet streaming of court proceedings deemed unlawful in circumstances); George W. Prescott Publ. Co. v. Stoughton Div. of the Dist. Court Dep't of the Trial Court, 428 Mass. 309, 311-312 (1998) (prior restraint on newspaper publisher's ability to report on juvenile records and proceedings unlawful); Care & Protection of Edith, 421 Mass. at 705-706 (prior restraint forbidding father from discussing care and protection proceeding with press unlawful).

Turning to the order in question, the judge properly noted that "the State has a compelling interest in protecting children from being exposed to disparagement between their parents."  See Barnes, 461 Mass. at 656, quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607-608 (1982) (safeguarding physical and psychological well-being of minor is compelling interest).  However, as important as it is to protect a child from the emotional and psychological harm that might follow from one parent's use of vulgar or disparaging words about the other, merely reciting that interest is not enough to satisfy the heavy burden of justifying a prior restraint.

Assuming for the sake of discussion that the Commonwealth's interest in protecting a child from such harm is sufficiently weighty to justify a prior restraint in some extreme circumstances, those circumstances do not exist here.  No

showing was made linking communications by either parent to any grave, imminent harm to the child. The mother presented no evidence that the child has been exposed to, or would even understand, the speech that gave rise to the underlying motion for contempt. As a toddler, the child is too young to be able to either read or to access social media. The concern about potential harm that could occur if the child were to discover the speech in the future is speculative and cannot justify a prior restraint. See Nebraska Press Ass'n, 427 U.S. at 563. Significantly, there has been no showing of anything in this particular child's physical, mental, or emotional state that would make him especially vulnerable to experiencing the type of direct and substantial harm that might require a prior restraint if at any point he were exposed to one parent's disparaging words toward the other. Cf. Felton v. Felton, 383 Mass. 232, 233-234 (1981), and cases cited (reversing and remanding for further consideration probate judge's order restricting father's visitation unless he refrained from instructing children in his religion -- "harm to the child . . . should not be simply assumed or surmised; it must be demonstrated in detail").

Because there has been no showing that any harm from the disparaging speech is either grave or certain, our analysis regarding the permissibility of the nondisparagement order issued in this case ends here. We note, however, that there are

measures short of prior restraint available to litigants and judges in circumstances in which disparaging speech is a concern. For example, our ruling does not impact nondisparagement agreements that parties enter into voluntarily. Depending upon the nature and severity of the speech, parents who are the target of disparaging speech may have the option of seeking a harassment prevention order pursuant to G. L. c. 258E, or filing an action seeking damages for intentional infliction of emotional distress or defamation. See Roman v. Trustees of Tufts College, 461 Mass. 707, 717-718 (2012), quoting Sena v. Commonwealth, 417 Mass. 250, 263-264 (1994) (setting forth elements of intentional infliction of emotional distress); White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004) (setting forth elements of defamation). And certainly judges, who are guided by determining the best interests of the child, can make clear to the parties that their behavior, including any disparaging language, will be factored into any subsequent custody determinations. See Ardizoni v. Raymond, 40 Mass. App. Ct. 734, 738 (1996). Of course, the best solution would be for parties in divorce and child custody matters to rise above any acrimonious feelings they may have, and, with the well-being of their children paramount in their minds, simply refrain from making disparaging remarks about one another.

We recognize that the motion judge put careful thought into his orders in an effort to protect a child caught in the middle of a legal dispute who was unable to advocate for himself. However, because there was no showing of an exceptional circumstance that would justify the imposition of a prior restraint, the nondisparagement orders issued here are unconstitutional.

Conclusion.  Paragraphs 1 and 2 of the judge's further orders on future disparagement, dated October 24, 2018, are hereby vacated.

So ordered.